1  SCHONBRUN DESIMONE SEPLOW
2  HARRIS HOFFMAN & HARRISON LLP
   WILMER J. HARRIS (150407)
3  SHAYLA R. MYERS (264054)
   715 Fremont Avenue, Suite A
4  South Pasadena, CA 91030
   Telephone: 626/441-4129
5  Fax: 626/283-5770
6  Email: wharris@sdshhlaw.com
           shaylamyers@sdshhlaw.com
7

8  JONATHAN K. TYCKO
9  ANDREA R. GOLD
   TYCKO & ZAVAREEI LLP
10 2000 L Street, N.W., Suite 808
   Washington, DC 20036
11 (202) 973-0900
12 (202) 973-0950 (fax)
   jtycko@tzlegal.com
13 agold@tzlegal.com

14 Attorneys for Plaintiffs
   UNITED STATES OF AMERICA *ex rel.*
15 MARK J. BROOKS

16

17            UNITED STATES DISTRICT COURT

18          CENTRAL DISTRICT OF CALIFORNIA

19
   UNITED STATES and the STATE OF )   Case No.  CV 11-08152 GW (VBKx)
20 CALIFORNIA *ex rel.* MARK J.      )
   BROOKS                            )   **FIRST AMENDED COMPLAINT
21                                   )   FOR DAMAGES**
                                     )
22           Plaintiffs/Relator      )     1. VIOLATION OF 31 U.S.C.
                                     )
23      vs.                          )        §3729(a)(1)
                                     )
24 ARBON EQUIPMENT                   )     2. VIOLATION OF 31 U.S.C.
   CORPORATION, RITE HITE            )
25 HOLDING CORPORATION, and          )        §3729(a)(2)
   DOES 1 through 10, inclusive      )
26                                   )     3. CAL. GOVT. CODE §§ 12651 *et*
                                     )
27           Defendants.             )        *seq.*
                                     )
28                                       **DEMAND FOR JURY TRIAL**

                                1

1    Plaintiff/Relator Mark J. Brooks, for his First Amended Complaint against

2 Defendants Arbon Equipment Corporation ("Arbon") and Rite Hite Holding

3 Corporation ("Rite Hite"), alleges as follows:

4                              **JURISDICTION AND VENUE**

5    1.    This Court has subject matter jurisdiction of this action pursuant to 28

6 U.S.C. §1331 and 31 U.S.C. §3732 under the Federal False Claims Act.

7    2.    This Court has personal jurisdiction over Rite-Hite because it transacts

8 business in the state of California.

9    3.    This Court has personal jurisdiction over Arbon because it transacts

10 business in the state of California.

11    4.    Venue of this action is proper in this this judicial district by virtue of 28

12 U.S.C. Section 1391 because, among other things, the acts complained of occurred in

13 this judicial district and because Defendants, Arbon and Rite Hite transact business in

14 California.

15    5.    Pursuant to 28 U.S.C. 1367, this Court has supplemental jurisdiction

16 over the subject matter of the claim brought pursuant to the California False Claims

17 Act on the ground that the claim is so related to the claims within this Court's original

18 jurisdiction that they form the same case or controversy under Article III of the

19 United States Constitution.

20                                    **PARTIES**

21    6.    Relator Mark J. Brooks is a citizen of the United States of America and

22 of the State of California.

23    7.    Relator is a former employee of Defendants, and during that period of

24 employment he lived in San Diego, California.  While working for Defendants,

25 Brooks made installation and service calls to both private companies and government

26 entities, both state and federal, across southern California.

27    8.    Relator is informed and believes and on that basis alleges that Defendant

28 Rite Hite is a corporation incorporated in the State of Wisconsin, and which does

1  business in the Central District of California.  Rite Hite is a manufacturer and seller

2  of loading dock equipment, industrial doors, safety barriers, and industrial fans.  In

3  doing the acts herein alleged, its employees, subcontractors, and agents acted within

4  the course and scope of their employment and agency with Defendant Rite Hite.

5      9.    Defendant Rite Hite is a "person" within the meaning of 31 U.S.C.

6  §3729(a) and the legal authority interpreting that provision.

7      10.    Defendant Rite Hite is a "person" within the meaning of Cal. Govt. Code

8  §12650 and the legal authority interpreting that provision.

9      11.    Relator is informed and believes and on that basis alleges that Defendant

10  Arbon is a wholly owned subsidiary of Rite Hite and is a loading dock distributor.

11  Arbon is a corporation incorporated in the State of Wisconsin, and which does

12  business in the Central District of California.  In doing the acts herein alleged, its

13  employees, subcontractors, and agents acted within the course and scope of their

14  employment and agency with Defendant Arbon.

15      12.    Defendant Arbon is a "person" within the meaning of 31 U.S.C.

16  §3729(a) and the legal authority interpreting that provision.

17      13.    Defendant Arbon is a "person" within the meaning of Cal. Govt. Code

18  §12650 and the legal authority interpreting that provision.

19      14.    Relator is informed and believes and on that basis alleges that the true

20  names and capacities, whether corporate, associate, individual or otherwise of

21  defendants, DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore

22  sues said Defendants by such fictitious names.  Each of the defendants designated

23  herein as DOE is negligently or otherwise legally responsible in some manner for the

24  events and happenings herein referred, including violations of the False Claims Act,

25  31 U.S.C. §3729, *et seq.,* and California False Claims Act, Cal. Govt. Code §§12650,

26  *et seq.*, and caused injuries and damages proximately thereby to Plaintiff, to the

27  United States Government and to the State of California, as herein alleged.

28

1    15.    Marks J. Brooks is an "original source," as defined by law, of the

2    information set forth herein.

3    16.    Mark J. Brooks is informed and believes and on that basis alleges that

4    the allegations in this complaint have not been publicly disclosed.

5    17.    Relator has complied with the False Claims Act by providing the

6    information upon which the allegations of this complaint are based on both to the

7    Attorney General of the United States of America and of the State of California, and

8    the United States Attorney for the Central District of California.  Relator's disclosure

9    statement is supported by material evidence known to relator at his filings

10   establishing the existence of Defendants' false claims.  Because the statement

11   includes attorney-client communications and work product of relator's attorneys, and

12   is submitted to the Attorneys General and to the United States Attorney for the

13   Central District of California in their capacity as potential co-counsel in the litigation,

14   the relator understands the disclosure statement to be privileged and confidential.

15   18.    Relator is informed and believes and on that basis alleges that all of the

16   acts complained of herein either (i) occurred within the last six years or (ii) within the

17   last ten years and that the United States government and the State of California

18   neither knew nor should have known of the violation of the False Claims Act within

19   the last three years.

20   19.    The United States is herein named a Plaintiff pursuant to the False

21   Claims Act, 31 U.S.C. §3729, *et seq.*, as funds of the United States through the

22   Department of Labor ("DOL"), have been directly or indirectly disbursed and

23   awarded to Defendants, as a result of the knowingly false statements and false claims

24   alleged in this Complaint made by or caused to be made by Defendants.

25   20.    The state of California is herein named a Plaintiff pursuant to the

26   California False Claims Act, Cal. Govt. Code §§12650, *et seq.*, as funds of the state

27   of California through the Department of Industrial Relations, have been directly or

28   indirectly disbursed and awarded to Defendants, as a result of the knowingly false

1 | statements and false claims alleged in this Complaint made by or caused to be made
2 | by Defendants.

3 | ## INTRODUCTION

4 |     21.    This is an action to recover damages and civil penalties on behalf of the
5 | United States and the state of California, brought by Plaintiff as *qui tam* relator
6 | pursuant to the False Claims Act, 31 U.S.C. §§3729 *et seq.* (the "FCA" or the "Act")
7 | and the California False Claims Act, Cal. Govt. Code §§ 12650 *et seq.*

8 |     22.    Defendant Rite Hite, headquartered in Milwaukee, Wisconsin, is a
9 | "world leader in the manufacture and sale of loading dock equipment, industrial
10 | doors, safety barriers and high-volume, low-speed industrial fans." *See*
11 | http://www.ritehite.com/pages/about-us/.

12 |     23.    Rite Hite "employs 1,400 people worldwide and maintains more than 30
13 | representative organizations in 100 locations throughout North America, Asia,
14 | Europe, and South America." *Id*. The company maintains manufacturing facilities in
15 | three states in the United States (Tennessee, Iowa, and Colorado) as well as in
16 | Canada, China, Germany, and Poland.

17 |     24.    Defendant Arbon, also headquartered in Milwaukee, Wisconsin, is a
18 | wholly owned subsidiary of Rite Hite. *See* http://www.arbonequipment.com.

19 |     25.    Founded in 1987, Arbon states that it is the "nation['s] largest loading
20 | dock and door distributor" with 40 offices and over 500 employees. *Id*. According to
21 | its website, Arbon has over 50,000 pieces of equipment under maintenance contracts.

22 |     26.    Plaintiff, Mark J. Brooks, is a former employee of Defendants. Brooks
23 | worked for Defendants from December of 2007 until August of 2009 as a Field
24 | Service Technician with Rite Hite and Arbon, installing and servicing loading dock
25 | equipment throughout southern California for both private and public sector
26 | customers.

27 |
28 |

27.     He was terminated from his position in August of 2009, after he complained to his supervisors that he was not being paid the prevailing wage, as required by the Davis-Bacon Act and the Service Contract Act.

28.     Brooks alleges that Arbon and Rite Hite are violating the False Claims Act ("FCA"), regularly and repeatedly, by certifying to the United States that they are paying their employees (including Brooks) the prevailing wage, as required by the Davis-Bacon Act, 40 U.S.C. §3142, and the Service Contract Act, 41 U.S.C. §§351-358, when, in fact, they are not.

29.     Brooks also alleges that Arbon and Rite Hite are violating the California False Claims Act, regularly and repeatedly, by certifying to the state of California that they are paying their employees (including Brooks) the prevailing wage, as required by Cal. Labor Code § 1771, when, in fact, they are not.

30.     During his tenure at the company, Brooks estimates that, had he been paid properly, he would have earned approximately $15,000 more.

31.     Upon information and belief, Defendants' failure to pay their qualifying employees at the applicable prevailing wage rates—and concomitant false certification of compliance—is a company-wide practice, causing millions of dollars in damages to the United States and the state of California.

## FACTS

32.     Paragraphs 1 through 31 are incorporated herein by reference.

33.     Rite Hite sells its products across the country and the world.

34.     Rite Hite's sales are accomplished via a wide network of distributors, including Arbon. Rite Hite refers to this distribution network as the "Rite-Hite Global Distribution Network" and members of the network undergo comprehensive training regarding Rite Hite products.

35.     In addition to Arbon, other members of the Rite-Hite Global Distribution Network include Johnson Equipment Company, McCormick Equipment Company, Inc., and Applied Handling, Inc.

36. Rite Hite employs approximately 1,400 people worldwide.

37. Arbon is one of the largest distributors of Rite Hite products in the country, if not the largest.

38. Arbon sells Rite Hite loading dock equipment, industrial doors, and plant equipment (such as industrial fans, lifts, mezzanines, and modular offices).

39. In addition to selling such products, Arbon employs technicians who install and maintain the equipment.  A substantial portion of Arbon's customer base is the federal and state governments.

40. With respect to the federal government, Arbon has contracts with the Department of Defense, Veteran's Administration, and United States Post Office.

41. With respect to the state of California government, Arbon has contracts with the University of California and San Diego State University.

42. Upon information and belief, Arbon is both a direct contractor with the government, as well as acts as a subcontractor on other government projects.

**Relator's Tenure With Defendants**

43. Mark Brooks began working at Arbon in December of 2007, and was terminated from his employment in August of 2009.  Brooks worked as a Field Service Technician and reported to District Service Manager Kevin Teafattiler.

44. Brooks installed, and performed maintenance on, loading dock equipment at U.S. military bases, U.S. Post Offices, and Veteran's Administration hospitals.  Some of this work was performed under "preventative maintenance plans," which require that service technicians do preventative maintenance on the applicable equipment on a regular basis, such as quarterly or yearly.

45. Prior to joining Arbon, Brooks worked as a Senior Foreman at Vortex Industries, a competitor of Arbon.  Brooks was recruited by Arbon from Vortex in the fall of 2007.  At that time, one of Arbon's employees, Salesperson Kevin Korb, came to one of the job sites where Brooks was working and asked him if he would be interested in moving to Arbon.

46.     Brooks inquired at Arbon thereafter and was interviewed by Business Manager Jeff King.  King asked about Brooks' rate of pay at Vortex and Brooks informed him that he was being paid $19 per hour.

47.     King offered Brooks a position at Arbon and told him that he would be paid $21 per hour.  Brooks accepted the position.

48.     Throughout his employment at Arbon, Brooks made installation and service calls at both private companies and government entities.  Approximately 15 to 20% of his work was performed for either state or federal government entities.

49.     Brooks did not have an office with the Company; rather, he maintained an office at his home.  However, Brooks drove a company truck and was provided with company-owned tools, facsimile machine, and other supplies.

50.     On a typical work day, Brooks would receive a fax in the afternoon from Pam Hashbarger, a Dispatcher working out of the Arbon office in Kent, Washington.  The fax would include a "Technical Services Call Report" form, which included information on the job to be performed, including the client name, location, description of equipment and work required.  A sample Technical Services Call Report is attached hereto as Exhibit A.

51.     After receiving the Technical Services Call Report, Brooks would travel to the job site the following day and complete the necessary work.

52.     After finishing the job, Brooks was required to complete a Service Work Record form.  This form included important information about the work performed, including the job site, job number, equipment information, time spent, and repair(s) performed.

53.     Once completed by Brooks, a representative of the customer was required to sign the Service Work Record, acknowledging that the work performed was "authorized, performed, and fully accepted."  If a representative was unavailable to provide the signature, Brooks was instructed by his superiors at Arbon to make the notation "NOA" in the signature space to indicate "no one available."

54.     A sample Service Work Record is attached hereto as Exhibit B.

55.     Once completed, Brooks was required to fax the Service Work Record to Hashbarger at Arbon.

56.     In addition to the aforementioned forms, Brooks also completed a "Technician Daily Time Sheet" and, for work performed pursuant to a Preventative Maintenance Plan, a "Planned Maintenance Program" form.

57.     The Technician Daily Time Sheet tracked the time that Brooks spent each day on each job assignment as well as travel time.  More specifically, the form requested detailed information about the type(s) of work performed, and the time spent doing that specific work, on each job.  Samples of each form are attached as Exhibit C and D, respectively.

58.     Brooks was also required to fax these forms to the dispatcher at Arbon on a daily basis.

59.     Brooks' pay was based on the time reported on the Technician Daily Time Sheet.

60.     For the duration of his tenure at Arbon, Brooks was paid the same rate—$21 per hour and, after a raise in June of 2008, $21.87 per hour—for all of the non-overtime work that he did for both private entities and government entities.

61.     He was never informed by Defendants that, for government work, he was entitled to be paid at a statutory prevailing wage rate.

62.     The issue of prevailing wage rates was never mentioned during his company training or otherwise.

**Relator's Discovery Of Defendants' Prevailing Wage Violations**

63.     On or about July 13, 2009, Brooks was assigned a job at Camp Pendleton, located in Camp Pendleton, California, but was missing some of the paperwork he needed to complete the work.

64.     Brooks contacted his supervisor, Kevin Teafattiler, and asked to be sent the missing items.  Teafattiler sent some paperwork to Brooks via facsimile and

9

1   included in those documents was a "Service Scheduling Report." A copy of that
2   document is attached hereto as Exhibit F.

3        65.    Brooks had never seen a "Service Scheduling Report" before and
4   believes that it was sent to him inadvertently. However, he examined it and noticed
5   that, for the work he had been assigned at Camp Pendleton, the document stated that
6   "********PREVAILING WAGE & CERTIFIED PAYROLL********" applied. *See*
7   Exh. F.

8        66.    Yet, Brooks had been paid the same rate—at that time, $21.87 per
9   hour—for all of the non-overtime work he performed, regardless of the job.

10        67.    That day, Brooks went to Camp Pendleton to complete the job. While
11   there, he spoke with co-worker Dirk Humphrey, another Field Service Technician
12   with Arbon, and asked him if he knew that the Camp Pendleton assignment was a
13   "prevailing wage job."

14        68.    Humphrey replied "What's a prevailing wage?"

15        69.    Brooks explained what he had learned and told Humphrey that he was
16   going to inquire about it with management.

17        70.    Humphrey wished him luck but indicated that he did not believe that
18   they would ever be paid the higher prevailing wage rate.

19        71.    Just over a week later, on or about July 24, 2009, Brooks spoke with
20   Kevin Korb, an Arbon salesperson based out of San Diego.

21        72.    During the call, Brooks asked Korb how he determined the quotes he
22   provided to customers and if such quotes took into account payment under the
23   prevailing wage rates. Korb replied that payment of prevailing wages was a "sticky
24   situation" and a "grey area" and that his boss, Dick Reck, had previously told him not
25   to worry about paying the prevailing wage rate because "the techs get paid enough."

26        73.    Shortly after his conversation with Korb, Brooks also inquired with
27   Arbon Service Coordinator, Pam Hashbarger, whether he would be paid the
28   prevailing wage for his Camp Pendleton work.

1    74.    She indicated that she would get back to him.  He never heard back from

2    her.

3    75.    On or about July 31, 2009, Brooks had been assigned another job at

4    Camp Pendleton.

5    76.    While there, he was asked by Mike Hazard, the construction

6    superintendent of the general contractor, Harper Construction, if he had completed

7    the required "Subcontractor Daily Time Sheet." A copy of the "Subcontractor Daily

8    Time Sheet" is attached hereto as Exhibit E.

9    77.    Brooks indicated to Hazard that he had not.

10   78.    Hazard showed Brooks a copy of the Subcontractor Daily Time Sheet,

11   which sought information about his "craft classifications", the different "crafts" he

12   had performed, and the percentage of time dedicated to each specific "craft" for

13   purposes of the Davis-Bacon Act's prevailing wage requirements.

14   79.    Brooks had never seen the form previously.

15   80.    Brooks told Hazard that he had never seen that form before, as well as

16   informed him that he was unaware of how to properly complete the form as he had

17   never been instructed by his employer about the procedural importance or

18   significance of this or any other forms dealing with prevailing wage classifications,

19   rates, and/or requirements.

20   81.    Hazard gave Brooks several blank copies of the Subcontractor Daily

21   Time Sheet and instructed him that they must be completed in order for him to be

22   paid for his work.

23   82.    Brooks took the forms, but was unable to complete them.

24   **Defendants' Retaliation Against Relator**

25   83.    Less than two weeks later, on the afternoon of August 12, 2009, Brooks

26   called Hashbarger to inquire if he had been assigned any more jobs for the day.

27

28

11

84.   She returned his call later that afternoon and told him that there was no work for him to perform but that he was to meet one of his superiors, Operations Manager Lonnie Child, at 5 p.m.

85.   Brooks met with Child as instructed.

86.   At that meeting, Child accused Brooks of falsifying his time records, which Brooks denied, and suspended him indefinitely.

87.   Child followed Brooks to his home in order to retrieve the company truck.

88.   While at Brooks' home, Brooks' wife asked Child when Brooks would receive the prevailing wage payments that he was entitled.

89.   Child made a call to his office and told Brooks that he would get back to him on the issue.

90.   On August 19, 2009, Brooks received a paycheck via UPS that was based on his regular rate of $21.87 per hour.

91.   On August 20, 2009, Brooks received a facsimile from Kevin Teafatiller informing him that his employment was terminated immediately.

92.   Shortly thereafter, Brooks contacted Arbon's Human Resources Department—both via e-mail and via telephone—to inquire about the prevailing wage payments.

93.    On one occasion, he spoke with Todd Minter, Human Resources Manager, who informed him that the prior payroll had already been "certified, processed, and completed" and that he had been paid all that he was entitled to and would not be paid anything more.

94.   Minter assured Brooks that Arbon had never before violated its obligations to pay the prevailing wage.

95.   Brooks was confused by Minter's statement that the payroll had been "certified", especially since he had never been able to complete the Subcontractor Daily Time Sheet that Mike Hazard had told him was mandatory.

## The Davis-Bacon Act Requirements

96.     The Davis-Bacon Act mandates that government contractors pay the prevailing wages set by the Secretary of Labor to employees working on government projects. 40 U.S.C. § 3142.

97.     The purpose of this requirement is to "give local laborers and contractors fair opportunity to participate in building programs when federal money is involved and protect local wage standards by preventing contractors from basing their bids on wages lower than those prevailing in the area." *William J. Lang Land Clearing, Inc. v. Admin., Wage & Hour Div., U.S. Dep't of Labor*, 520 F. Supp. 2d 870, 877 (E.D. Mich. 2007) (citations omitted).

98.     The Act also requires that the government contracts that implicate prevailing wage issues include certifications that the "contractor or subcontractor" will pay its employees at the prevailing wage rate listed in the contract. 40 U.S.C. § 3142(c).

99.     Contractors must submit weekly payroll reports to the Government that include detailed information about each worker, including the "name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis–Bacon Act), daily and weekly number of hours worked, deductions made and actual wages paid." 29 C.F.R. § 5.5(a)(3)(i).

100.    Included with each weekly payroll report submitted to the Government is a "Statement of Compliance" that must be "signed by the contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract." 29 C.F.R. § 5.5(a)(3)(ii)(B).

101.    The Statement of Compliance "shall certify the following": (1) That the payroll for the payroll period contains the information required to be provided under § 5.5 (a)(3)(ii) of Regulations, 29 CFR part 5, the appropriate information is being

1   maintained under § 5.5 (a)(3)(i) of Regulations, 29 CFR part 5, and that such

2   information is correct and complete; (2) That each laborer or mechanic (including

3   each helper, apprentice, and trainee) employed on the contract during the payroll

4   period has been paid the full weekly wages earned, without rebate, either directly or

5   indirectly, and that no deductions have been made either directly or indirectly from

6   the full wages earned, other than permissible deductions as set forth in Regulations,

7   29 CFR part 3; (3) That each laborer or mechanic has been paid not less than the

8   applicable wage rates and fringe benefits or cash equivalents for the classification of

9   work performed, as specified in the applicable wage determination incorporated into

10  the contract. 29 C.F.R. § 5.5(a)(3)(ii)(B).

11      102.   The U.S. Department of Labor has created, and provides free of charge,

12  a Payroll form that may be used for the contractor's weekly submissions.  A copy of

13  this form is attached hereto as Exhibit G.

14      103.   Use of this specific form, entitled Form WH-347, is optional; however,

15  as is made clear on the form, "it is mandatory for covered contractors and

16  subcontractors performing work on federally financed or assisted construction

17  contracts to respond to the information collection contained in 29 C.F.R. §§3.3,

18  5.5(a)." Exh. G.

19      104.   Contractors are also required to insert in any subcontracts several

20  clauses, including the aforementioned provisions.  *See* 29 C.F.R. § 5.5(a)(6) ("The

21  contractor or subcontractor shall insert in any subcontracts the clauses contained in 29

22  CFR 5.5(a)(1) through (10)…").

23      105.   Further, "[t]he prime contractor is responsible for the submission of

24  copies of payrolls by all subcontractors," 29 C.F.R. §5.5(a)(3)(ii)(A), and the "prime

25  contractor shall be responsible for the compliance by any subcontractor or lower tier

26  subcontractor with all the contract clauses in 29 C.F.R. 5.5." *Id.* at §5.5(a)(6).

27      106.   "Payment of federal funds to contractors are expressly contingent upon

28  receipt of the contractors' weekly certifications of Davis-Bacon Act" compliance.

14

1  *U.S. ex rel. Wall v. Circle Const., LLC*, 700 F. Supp. 2d 926, 937 (M.D. Tenn. 2010)

2  (citing 40 U.S.C. §3142).

3  <u>**The Service Contract Act Requirements**</u>

4      107.   The Service Contract Act mandates that government contractors must,

5  inter alia, pay their employees a prevailing wages determined by the Secretary of

6  Labor to employees working on government projects.

7      108.   The primary purpose of the Service Contract Act is to "protect all

8  employees of contractors and subcontractors furnishing services to federal agencies"

9  and to "protect service contract competitors from unfair competition by employers

10  paying subminimum wages." *Am. Waste Removal Co. v. Donovan*, 748 F.2d 1406,

11  1410 (10th Cir. 1984).

12      109.   The Service Contract Act applies to "any contract or bid specification for

13  a contract, whether negotiated or advertised, that (1) is made by the Federal

14  Government or the District of Columbia; (2) involves an amount exceeding $2,500;

15  and (3) has as its principal purpose the furnishing of services in the United States

16  through the use of service employees."  41 U.S.C.A. § 6702 (a).

17      110.   Upon information and belief, Defendants have entered into contracts

18  with federal government agencies that were each in excess of $2,500 and the

19  principal purpose of which was to furnish services in the United States through the

20  use of service employees.

21      111.   The Service Contract Act also requires that contractors include a

22  provision in their contracts and bid specifications that "specif[ies] that on the date a

23  service employee begins work on a contract…the contractor or subcontractor will

24  deliver to the employee a notice of the compensation required…on a form prepared

25  by the Federal agency, or will post a notice of the required compensation in a

26  prominent place at the worksite."  41 U.S.C.A. § 6703(4).

27      112.   Although there is no private right of action for damages under the

28  Service Contract Act, a party may bring an action under the False Claims Act as a qui

1  tam relator for the United States to recover damages suffered by the Government due
2  to false claims arising out of contracts entered into pursuant to the Service Contract
3  Act. *See, e.g,, United States* ex rel. *Sutton v. Double Day Office Services, Inc.,* 121
4  F.3d 531 (9th Cir. 1997).

5  <u>**California's Prevailing Wage Laws and False Claims Act**</u>

6      113.   California has its own state equivalent of the False Claims Act.

7      114.   The California False Claims Act, codified at Cal. Govt. Code §§ 1265 et
8  seq., tracks the federal law and provides for treble damages and penalties of up to
9  $10,000 for each and every false and fraudulent claim.

10      115.   Similarly, California's Labor Code includes a provision mandating
11  payment of the prevailing wage for work performed on state contracts.  Cal. Labor
12  Code § 1771.

13      116.   That provision states "[e]xcept for public works projects of one thousand
14  dollars ($1000) or less, not less than the general prevailing rate of per diem wages for
15  work of a similar character in the locality in which the public work is performed, and
16  not less than the general prevailing rate of per diem wages for holiday and overtime
17  work fixed as provided in this chapter, shall be paid to all workers on public works."
18  *Id*.

19      117.   Like the Davis-Bacon Act requirements, the California law requires
20  employers to submit to the contracting public agency a certified payroll record, under
21  penalty of perjury, listing, *inter alia*, the employees on a project, daily hours worked,
22  and wages paid.  Cal. Labor Code § 1776(a).

23  <u>**The Applicable Prevailing Wage Rates under the Davis-Bacon Act**</u>

24      118.   According to the Davis-Bacon Act, the Department of Labor is tasked
25  with determining the prevailing wage rate for the corresponding classes of laborers
26  and/or mechanics. 40 U.S.C. §3142.

27      119.   The Code of Federal Regulations sets out a detailed process by which
28  the Secretary of Labor makes such determinations. *See* 29 C.F.R. 1.

120.   The Department of Labor publishes the applicable prevailing wage rates twice a year—in August and February and such rates take effect 30 days after publication.

121.   For the majority of his work assignments, Brooks should have been classified as an Elevator Mechanic and paid the corresponding prevailing wage rate.

122.   The 2008 prevailing wage rate for that classification was $59.38, including fringes.  For reference, the prevailing wage decision that the above figure is based on is attached hereto as Exhibit H.

**The Applicable Prevailing Wage Rates under the Service Contract Act**

123.   According to the Service Contract Act, the Department of Labor must set the prevailing wage rate for the corresponding classes of service workers.  29 C.F.R. 4.3.

124.   The Department of Labor provides the minimum wage classifications under the Service Contract Act.

125.   "All service employees of the classes who actually perform the specific services called for by the contract...are covered by the provisions specifying such minimum monetary wages and fringe benefits for such classes of service employees and must be paid not less than the applicable rate established for the classification(s) of work performed."  29 C.F.R. § 4.152.

126.   For his work assignments covered by the Service Contract Act, Brooks should have been classified as an Elevator Repairer and paid the corresponding wage rate.

127.   The "non-standard" Service Contract Act occupation code for Elevator Repairer is number 23210.

128.   The 2012 wage rate for that classification was $57.29.  For reference, a document from the Department of Labor website detailing this information is attached hereto as Exhibit I.

129.   The applicable wage rates for Brooks' work—both his work covered by the Davis Bacon Act and his work covered by the Service Contract Act—are substantially higher than the initial wage rate paid to Brooks of $21 per hour, as well as his post-raise rate of $21.87 per hour.

130.   Brooks estimates that, had he been paid the proper prevailing wages, he would have earned over $15,000 of additional compensation during his time at Arbon.

**Rite Hite and/or Arbon's Contracts with Federal and State Governments**

131.   At all times material to this Complaint, upon information and belief, Rite Hite and Arbon had numerous contracts with various agencies of the United States Government.

132.   During his 20-month tenure at Arbon, Brooks worked on government projects at the United States Marine Corps Base (Camp Pendleton), Veterans Administration (San Diego location), United States Post Office, Defense Commissary Agency (DeCA), and the Marine Corps Air Station (Miramar).

133.   At all times material to this Complaint, upon information and belief, Rite Hite and Arbon had numerous contracts with the California State Government.

134.   Brooks completed jobs at various state government entities including the University of California and San Diego State University.

135.   In total, Brooks estimates that, at a minimum, he completed over 90 federal and state government jobs during his time at Arbon.

136.   Brooks was not paid the prevailing wage rate—under either the Davis Bacon Act or the Service Contract Act—for any of this work.

**Defendants Falsely Certified Their Compliance with the Davis-Bacon Act**

137.   At all times material to this Complaint, Defendants were required to submit certified weekly payroll reports and a certified Statement of Compliance with the Davis-Bacon Act.

18

138. Defendants submit, or cause to be submitted, these reports and certifications to the United States through the Department of Labor.

139. Defendants submitted false claims to the United States when they submitted, on numerous occasions, false certified payroll records.

140. Defendants submitted false claims to the United States when they certified, on numerous occasions, that they were in compliance with the Davis-Bacon Act, which is a condition of payment for suppliers selling to the United States.

141. Defendants received payment from the United States upon submitting these false claims.

142. At all times material to this Complaint, Defendants were required to comply with California's prevailing wage laws and submit certified weekly payroll reports testifying to such compliance. Cal. Labor Code § 1771.

143. Defendants violated Cal. Labor Code § 1771 when they failed to pay Brooks at the prevailing wage for the public works projects he worked on for state of California.

144. Defendants violated the California False Claims Act when they submitted false claims, in the form of certified payroll records, to the state of California certifying that they had complied with the state's prevailing wage laws.

145. Defendants submit, or cause to be submitted, these reports and certifications to the state of California through the Department of Industrial Relations.

146. Defendants submitted false claims to the state of California when they certified, on numerous occasions, that they were in compliance with Cal. Labor Code § 1771, which is a condition of payment for contractors doing business with the state of California.

147. Defendants received payment from the state of California upon submitting these false claims.

1 | **Defendants Falsely Certified Their Compliance with the Service Contract Act**

2 |     148.   At all times material to this Complaint, Defendants submitted, or caused

3 | to be submitted, bills, invoices, and statements for their services to the United States,

4 | including various federal agencies, thereby knowingly falsely certifying that they

5 | were in compliance with the Service Contract Act.

6 |     149.   Defendants submitted false claims to the United States when they

7 | submitted, on numerous occasions, such falsely certified bills, invoices, and other

8 | statements.

9 |     150.   Defendants submitted false claims to the United States when they

10 | certified, on numerous occasions, that they were in compliance with the Service

11 | Contract Act, which is a condition of payment for suppliers selling to the United

12 | States. **[suppliers selling or contractors?]**

13 |     151.   Defendants received payment from the United States upon submitting

14 | these false claims.

15 |

16 | **FIRST CAUSE OF ACTION**

17 | **VIOLATION OF FEDERAL FALSE CLAIMS ACT**

18 | **31 U.S.C. §3729(a)(1)**

19 | **(AGAINST ALL DEFENDANTS)**

20 |     152.   Paragraphs 1-151 are incorporated herein.

21 |     153.   Defendant knowingly presented, or caused to be presented, false or

22 | fraudulent claims for payment or approval to officers or employees of the United

23 | States Government.

24 |     154.   As a result of these false or fraudulent claims, the United States

25 | Government suffered damages.

26 |

27 |

28 |

1

**SECOND CAUSE OF ACTION**

**VIOLATION OF FEDERAL FALSE CLAIMS ACT**

**31 U.S.C. §3729(a)(2)**

**(AGAINST ALL DEFENDANTS)**

155.   Paragraphs 1-154 are incorporated herein.

156.   Defendant knowingly made, used, or caused to be made or used, false records and statements to obtain the United States Government's payment of false or fraudulent claims.

157.   The false records and statements included, but may not be limited to, the representations made in Defendant's false certifications and other false statements to the Department of Labor and its agents, through explicit and implicit certifications of compliance with federal regulations, statutes, and program instructions in order to get paid by the United States government.

158.   As a result of these false records or statements, the United States Government suffered damages.

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA FALSE CLAIMS ACT**

**CAL. GOVT. CODE §§ 12651 *et seq.***

**(AGAINST ALL DEFENDANTS)**

159.   Paragraphs 1-158 are incorporated herein.

160.   Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the California State Government for payment or approval.

161.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the California State Government to approve and pay such false and fraudulent claims.

21

1    162.   The California State Government, unaware of the falsity of the records,
2    statements and claims made, used, presented or caused to be made, used or presented
3    by Defendants, paid and continues to pay the claims that would not be paid but for
4    the acts and/or conduct of Defendants, as alleged herein.

5    163.   By reason of Defendants' acts, the State of California has been damaged,
6    and continues to be damaged, in a substantial amount to be determined at trial.

7    164.   Pursuant to Cal. Govt. Code § 12651(a), the State of California is
8    entitled to three times the amount of actual damages plus the maximum penalty of
9    $10,000 for each and every false or fraudulent claim, record, or statement made, used,
10   presented or caused to be made, used, or presented by Defendants.

11

12                                      **PRAYER**

13   WHEREFORE, Plaintiff prays for the following relief:

14   1.   A permanent injunction requiring Defendants to cease and desist from
15   violating the federal False Claims Act and the California False Claims Act, Cal. Govt.
16   Code §§12650 *et seq.*;

17   2.   Judgment against Defendants in an amount equal to three times the
18   amount of damages the United States has sustained as a result of the Defendants'
19   unlawful conduct;

20   3.   Civil monetary penalties for each false and fraudulent claim submitted to
21   the United States by Defendants;

22   4.   Judgment against Defendants in an amount equal to three times the
23   amount of damages the state of California has sustained as a result of the Defendants'
24   unlawful conduct;

25   5.   An award to Relator pursuant to 31 U.S.C. §3730(d);

26   6.   An award to Relator pursuant to Cal. Govt. Code §12652;

27   7.   An award of reasonable attorneys' fees, costs, and expenses;

28

22

1    8.    Such other relief as the Court deems just and equitable.

2

3                                             Respectfully submitted,

4    Dated:  April 12, 2013                   SCHONBRUN DESIMONE SEPLOW
                                              HARRIS HOFFMAN & HARRISON LLP
5

6                                             TYCKO & ZAVAREEI LLP

7

8

9                                    By: _Wilmer J. Harris_____
                                         Wilmer J. Harris
10                                       Shayla Myers

11                                       Attorneys for Relator/Plaintiff,
12                                       Mark Brooks

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JURY DEMAND**

2     Relator hereby demands a jury trial on all issues triable to a jury.

3

4                                             Respectfully submitted,

5   Dated:  April 12, 2013          SCHONBRUN DESIMONE SEPLOW
                                    HARRIS HOFFMAN & HARRISON LLP
6

7                                   TYCKO & ZAVAREEI LLP

8

9
                                    By: _Wilmer J. Harris_
10                                       Wilmer J. Harris
11                                       Shayla Myers

12
                                    Attorneys for Relator/Plaintiff,
13                                    Mark Brooks

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

# Exhibit A

# ARBON
## EQUIPMENT CORPORATION
A RITE-HITE COMPANY

*MARK - 2-23*

13230 Evening Creek Dr S.
Suite 210
San Diego, CA 92128
Phone: (714)922-2223

**TECHNICAL
SERVICES
CALL REPORT**

JOB NAME Deca Commissary-MCAS Miramar

| INVOICE TO | CONTACT PERSON | JOB LOCATION |
|---|---|---|
| Deca Commisary-Mira. Building 2661 | Che Guevarra TEL# 858-577-4516 606 CHE | Deca Commissary-MCAS Miramar Building 2661 |
| Miramar          CA  92145 | C. Guevarra REQ DATE 2/05/2009 | San Diego         CA 92145 |

**DESCRIPTION OF EQUIPMENT**
DCOR #1
TM/FK

**WORK REQUIRED**

REPLACE LIP, SHAFT, & LIP HINGES

*5 years*

JOB#    1633529
INSTALLATION
SERVICE        X
PMP
WARRANTY

**WORK PERFORMED**

CTY PART#      DESCRIPTION

DATE WORKED
SERVICED BY
TRAVEL TIME
TIME IN
TIME OUT

I HEREBY ACKNOWLEDGE THAT THE ABOVE SER-
VICE INSTALLATION WORK HAS BEEN AUTHORIZED
PERFORMED, AND FULLY ACCEPTED.

SIGNATURE                    DATE

Exhibit B



**ARBON**
EQUIPMENT CORPORATION

# SERVICE WORK RECORD

TICKET 137246
JOB# 1633529

| NAME: Decu Commissary | DATE 2-23-09 | JOB | ☒ PENDING |
|---|---|---|---|
| STREET: MCAS MIRAMAR | | | |
| CITY: San Diego, CA. | TECHNICIAN M. Brooks | STATUS | ☐ COMPLETE |
| CONTACT: Che | | | |

| PHONE: | IN | ☐ OPERATING | ☒ NOT OPERATING |
|---|---|---|---|
| P.O.# | OUT | ☐ OPERATING | ☒ NOT OPERATING |

| MAKE Serco | MODEL Pit Hyd. | SERIAL NUMBER | LOCATION East Meat | EQUIPMENT NUMBER |
|---|---|---|---|---|

☐ PMP   ☒ SRV   ☐ INN   ☐ RST
☐ OHD   ☐ WAR   ☐ INS   ☐ OTHER

| DATE WORKED 2-23-09 | | | SYMPTOMS / COMPLAINTS / INSTRUCTIONS |
|---|---|---|---|
| SERVICED BY M.B | | | |
| TRAVEL TIME 1.0 | | | |
| TIME IN 7:00 Pm | | | NOTES |
| TIME OUT 7:00 Pm | | | |

REPAIR DETAILS

Arrived @ site, cut new spools, drilled
& installed zerk fittings on all
spools, suspended lip w/crane and
tacked spools in-place. Final welded
all spools — installed lip hinge shaft.
Lubed. — Checked operation — lip
moves freely and without binding.

Return & weld lip attachments and
attach Hyd. Ram, adj. Hydraulics and
grind & paint. /

| QUANTITY | SOURCE | PART# | DESCRIPTION |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I HEREBY ACKNOWLEDGE THAT THE ABOVE SERVICE / INSTALLATION WORK HAS BEEN AUTHORIZED, PERFORMED AND FULLY ACCEPTED.

| CUSTOMER SIGNATURE N.O.A. | COMPANY |
|---|---|
| PRINT NAME PLEASE N.O.A. | DATE 2-23-09 |

ARB205-006

# Exhibit C

# ARBON
EQUIPMENT CORPORATION

**Technician Daily Time Sheet**

Arbon Form #9.4.F
Orig:10/01/2005
Rev. Date: 00/00/00

Technician Name: **Mark Brooks**

DATE: 2-5-09

EMP# 4044

| ACTIVITY JOB NAME & NUMBER | TIME IN | TIME OUT | TRAVEL 01 | INSTALLATION 02 | SERVICE/REPAIR OVERHEAD DOOR 03 | PMP 04 | VENDOR WARRANTY 05 | SRV DEPT WAR 06 | EQ SALES REQ 07 | SRV SALES REQ 09 | NON-ACTIVE 10 | NON-AVAILABLE 20 | TECH TRAINING 30 | LOANER TECH 50 | VACATION 80 | PERSONAL DAYS 90 | STATUS | REMARKS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TRAVEL | 8:45 | 9:15 | .50 | | | | | | | | | | | | | | | |
| 1625320 Koch | 9:15 | 10:45 | | | | 1.50 | | | | | | | | | | | | C |
| To S.D. Shop | 10:45 | 11:15 | .75? | | | | | | | | | | | | | | | |
| TRAVEL ?? | 11:15 | 11:45 | 1.50 | | | | | | | | | .50 | | | | | | |
| 1633392 Dzcat | 11:45 | 12:00 | | | | | | | | | .25 | | | | | | I | TOO MUCH PRODUCT NO ROOM TO DO SERVICE DESCRIBED. |
| TRAVEL | 12:00 | 12:30 | .50 | | | | | | | | | | | | | | | |
| PRNSAM | | | | | | | | | | | | | | | | 4.0 | | |
| **TOTAL HOURS** | 7.75 | | 1.50 | | | 1.50 | | | | | .25 | .50 | | | | 4.0 | 4.0 | |

DAILY MILEAGE:   Start: _____   End: _____

I certify that the information contained on this time sheet is accurate and correct.
I understand that falsification of an employee time sheet is a disciplinary offense per the Rite-Hite Employee Handbook.

Employee Signature: _____   Date: 2-5-09

Reviewed by: _____   Date: _____

**Job Status Codes**
Use Multiple Codes if Needed
C   Complete
I   Incomplete
P   Parts Required
Q   Quote Needed

# Exhibit D



**ARBON EQUIPMENT CORPORATION**

# Planned Maintenance Program
## Mechanical Dock Levelers

Customer _USMC/PENDLETON_   Date _4-22-09_   Job # _1637704_

## Cleaning, Lubrication, Inspection    * See Comments Below
## Adjustment, & Operation

1. Barricade Leveler & Work Area
2. Check Operation of Leveler
3. Clean Debris Off Top of Lip Spools
4. Install Safe-T-Strut
5. Clean & Sweep Out Pit

6. Inspect Leveler Welds
7. Inspect Leveler Structure / Subframe
8. Inspect Shims
9. Inspect Rear Hinges
10. Lubricate Rear Hinge Pins

11. Check Main Spring Adjustment
12. Check Lip Assist Rod & Spring Adjustment
13. Inspect/Clean Pawl & Ratchet Bar on Holddown
14. Lubricate All Pins & Pivot Points
15. Lubricate Lip Hinge & Spools

16. Check for Lip Crown
17. Inspect Snubbing Cable
18. Inspect Chains & "S" Hooks
19. Lubricate Lifter Arm (Roller, Bearings)
20. Inspect Lip Extension (Hydracheck, Walk Out Lip)

21. Inspect Cam
22. Check for Proper Operation
23. Leveler Extension
24. Lip Extension/Retraction
25. Lip Fall Speed

26. Below Dock End Load
27. Inspect Weatherseal (Channel, PT-2, NB-1, Foam)
28. Inspect Toe Guards
29. Inspect Dock Bumpers
30. Inspect Seal/Shelter

31. Final Clean-Up of Dock Leveler Area
32. Place Updated Arbon Sticker on Dock Leveler

## Comments:

Customer Signature _N.O.A._   Arbon Technician _____

White - Customer Copy    Yellow - Field Service Representative Copy    Pink - Planned Maintenance File Copy

# Exhibit E

# SUBCONTRACTOR DAILY TIME SHEET

### BEQ P-206 / EDF P-028 AREA 41
### MCB - CAMP PENDLETON
### CONTRACT #: N62473-07-C-6036

569245

H 107020-00

* SUBCONTRACTOR:

| * DATE: | | * PREPARED BY: |
|---|---|---|

* COMPETENT PERSON ON SITE TODAY:

| # | * EMPLOYEE NAME | * WORK PERFORMED | * CLASSIFICATION | GRP # | * HOURS |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |

| # | EQUIPMENT USED TODAY | DESCRIPTION OF WORK | HOURS RUN | HOURS IDLE |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |

| # | SUPPLIER | MATERIALS DELIVERED | TIME |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |

| # | COMMENTS |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |

USE BACK OF SHEET FOR ADDITIONAL COMMENTS

* all areas in red MUST be filled out / all areas in black to be filled out only if applicable

Exhibit F

REDACTED

RUN: 5/17/2009 at 19:02:08
BY: GAILN

SERVICE SCHEDULING REPORT
OFFICE:   Arbon Equipment Corporation
LOCATION: Anaheim, CA
SERVICE FROM: 1/01/2008 TO: 12/31/2009

PGM: SRV200
PAGE: 1

| CUSTOMER NAME / CONTACT NAME | ZIP | ZONE PHONE # | TYPE | SLS MAN | DATES REQUIRED | SCHEDULE | LAST WRK PRTY | SITE RDY? | TICKET # | SSB # | RNC # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Albertsons #06191<br>5015 Del Amo Boulevard<br>Lakewood, CA<br>Kevin Evans | 90712-00800 | 702-591-1632 | IWS | 2769 | 7/17/2009 | 7/27/2009 | 000 | Y | 2/TPC SEALS, 22" PROJECTION; 1/COOL HEAD DOCK LIGHT<br>R/U LIGHT FROM ARBON ANAHEIM SHOP<br>SELL | I659965 | 3316123 |

*Ship into Shop from plastissa*

REMOVE EXISTING SEALS & DISPOSE OFF SITE. INSTALL NEW
SEALS AND DOCK LIGHT.
SR 3316123

*(handwritten: Mike)*

| Bachelor Enlisted Quarters<br>41 Area Las Flores<br>Camp Pendleton, CA<br>Mike Hazard | 92054-00000 | 619-921-9124 | INN | 3895 | | 12/12/2009 | 000 | Y | 1/RHH807 480/3 18"LIP; 4/BUMPERS, RD412-24; 1/RHR600<br>********PREVAILING WAGE & CERTIFIED PAYROLL********* | 1617325 | 3275458 |

PETER HANSEN

*(handwritten: 6/22 + 6/23)*

INSTALL ABOVE EQUIPMENT
SO 3275458

| Bachelor Enlisted Quarters<br>41 Area Las Flores<br>Camp Pendleton, CA<br>Mike Hazard | 92054-00000 | 619-921-9124 | INN | 3895 | | 12/05/2008 | 000 | Y | (1) RHH4087; 1/RHR600 | 1617332 | 3275458 |

PETER HANSEN

CONTROL WIRING
SO 3275458

| Bloomfield Bakers<br>10711 Bloomfield Street<br>Los Alamitos, CA<br>Augie Florandez | 90720-00000 | KF<br>562-742-0425 | INN | 3722 | 6/22/2009 | 5/15/2009 | 000 | Y | 1/1X10 FASTRAX (WHSE DOOR #2);<br>1/12X14 FASTRAX (HUMBOLT INGREDIENT);<br>1/9'2"X12' FASTRAX (INGREDIENT STAGING AREA DOOR) | 1648582 | 3307723 |

*(handwritten: 6/19, VBL)*

CUSTOMER TO PROVIDE FORK LIFT, MECHANICAL INSTALL OF
DOORS. SEE ATTACHED INSTALL WORKSHEET.
DURANTE/ SO 3307723

| Bloomfield Bakers<br>10711 Bloomfield Street<br>Los Alamitos, CA<br>Augie Florandez | 90720-00000 | KF<br>562-742-0425 | INN | 3722 | | 5/15/2009 | 000 | Y | COMPLETE CONTROL WIRING &<br>PUSH BUTTON ACTIVATION FOR (4) FASTRAX DOORS<br>DURANTE | 1648578 | 3307723 |

SO 3307723

# Exhibit G

**U.S. Department of Labor**
Wage and Hour Division

**PAYROLL**
**(For Contractor's Optional Use; See Instructions at www.dol.gov/whd/forms/wh347instr.htm)**

*Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number.*

U.S. Wage and Hour Division
Rev. Dec. 2008
OMB No.: 1215-0149
Expires: 12/31/2011

NAME OF CONTRACTOR ☐   OR SUBCONTRACTOR ☐

PAYROLL NO. _____   FOR WEEK ENDING _____   PROJECT AND LOCATION _____   PROJECT OR CONTRACT NO. _____

| (1) NAME AND INDIVIDUAL IDENTIFYING NUMBER (e.g., LAST FOUR DIGITS OF SOCIAL SECURITY NUMBER) OF WORKER | (2) NO. OF WITHHOLDING EXEMPTIONS | (3) WORK CLASSIFICATION | OT OR ST | (4) DAY AND DATE / HOURS WORKED EACH DAY | (5) TOTAL HOURS | (6) RATE OF PAY | (7) GROSS AMOUNT EARNED | (8) DEDUCTIONS FICA | WITH-HOLDING TAX | OTHER | TOTAL DEDUCTIONS | (9) NET WAGES PAID FOR WEEK |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | O | | | | | | | | | |
| | | | S | | | | | | | | | |

Public Burden Statement

While completion of Form WH-347 is optional, it is mandatory for contractors and subcontractors performing work on Federally financed or assisted construction contracts to respond to the information collection contained in 29 C.F.R. §§ 3.3, 5.5(a). The Copeland Act (40 U.S.C. § 3145) contractors are subcontractors performing work on Federally financed or assisted construction projects to "furnish weekly a statement with respect to the wages paid each employee during the preceding week." U.S. Department of Labor (DOL) regulations at 29 C.F.R. § 5.5(a)(3)(ii) require contractors to submit weekly a copy of all payrolls to the Federal agency contracting for or financing the construction project, accompanied by a signed "Statement of Compliance" indicating that the payrolls are correct and complete and that each laborer or mechanic has been paid not less than the proper Davis-Bacon prevailing wage rate for the work performed. DOL and federal contracting agencies reviewing the information review the information to determine that employees have received legally required wages and fringe benefits.

We estimate that it will take an average of 55 minutes to complete this collection, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding these estimates or any other aspect of this collection, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

(over)

Date _____

I, _____ , _____
(Name of Signatory Party)                    (Title)

do hereby state:

(1) That I pay or supervise the payment of the persons employed by _____ on the
_____
(Contractor or Subcontractor)

_____ ; that during the payroll period commencing on the
(Building or Work)

_____ day of _____, and ending the _____ day of _____,
all persons employed on said project have been paid the full weekly wages earned, that no rebates have been or will be made either directly or indirectly to or on behalf of said _____
(Contractor or Subcontractor)
from the full weekly wages earned by any person and that no deductions have been made either directly or indirectly from the full wages earned by any person, other than permissible deductions as defined in Regulations, Part 3 (29 C.F.R. Subtitle A), issued by the Secretary of Labor under the Copeland Act, as amended (48 Stat. 948, 63 Stat. 108, 72 Stat. 967; 76 Stat. 357; 40 U.S.C. § 3145), and described below.

(2) That any payrolls otherwise under this contract required to be submitted for the above period are correct and complete; that the wage rates for laborers or mechanics contained therein are not less than the applicable wage rates contained in any wage determination incorporated into the contract; that the classifications set forth therein for each laborer or mechanic conform with the work he performed.

(3) That any apprentices employed in the above period are duly registered in a bona fide apprenticeship program registered with a State apprenticeship agency recognized by the Bureau of Apprenticeship and Training, United States Department of Labor, or if no such recognized agency exists in a State, are registered with the Bureau of Apprenticeship and Training, United States Department of Labor.

(4) That:
(a) WHERE FRINGE BENEFITS ARE PAID TO APPROVED PLANS, FUNDS, OR PROGRAMS

☐ – In addition to the basic hourly wage rates paid to each laborer or mechanic listed in the above referenced payroll, payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees, except as noted in section 4(c) below.

(b) WHERE FRINGE BENEFITS ARE PAID IN CASH

☐ – Each laborer or mechanic listed in the above referenced payroll has been paid, as indicated on the payroll, an amount not less than the sum of the applicable basic hourly wage rate plus the amount of the required fringe benefits as listed in the contract, except as noted in section 4(c) below.

(c) EXCEPTIONS

| EXCEPTION (CRAFT) | EXPLANATION |
|---|---|
|  |  |
|  |  |
|  |  |

REMARKS:

| NAME AND TITLE | SIGNATURE |
|---|---|
|  |  |

THE WILLFUL FALSIFICATION OF ANY OF THE ABOVE STATEMENTS MAY SUBJECT THE CONTRACTOR OR SUBCONTRACTOR TO CIVIL OR CRIMINAL PROSECUTION. SEE SECTION 1001 OF TITLE 18 AND SECTION 231 OF TITLE 31 OF THE UNITED STATES CODE.

Exhibit H

```
CA080001 MOD 15  REVISED 12/05/08  CA1
******** THIS WAGE DETERMINATION WAS REPLACED ON 12/05/08********
General Decision Number: CA080001 11/14/2008

Superseded General Decision Number: CA20070001

State: California

Construction Types: Building, Heavy (Heavy and Dredging),
Highway and Residential


County: San Diego County in California.

BUILDING CONSTRUCTION PROJECTS; DREDGING PROJECTS (does not
include hopper dredge work); HEAVY CONSTRUCTION PROJECTS (does
not include water well drilling); HIGHWAY CONSTRUCTION
PROJECTS; RESIDENTIAL CONSTRUCTION PROJECTS (consisting of
single family homes and apartments up to and including 4
stories)


Modification Number     Publication Date
         0                02/08/2008
         1                02/15/2008
         2                02/22/2008
         3                02/29/2008
         4                03/07/2008
         5                03/28/2008
         6                04/04/2008
         7                04/11/2008
         8                05/09/2008
         9                06/20/2008
        10                07/04/2008
        11                07/11/2008
        12                08/01/2008
        13                09/12/2008
        14                10/03/2008
        15                11/14/2008

 ASBE0005-002 08/07/2007


                        Rates          Fringes

Asbestos Workers/Insulator
(Includes the application of
all insulating materials,
protective coverings,
coatings, and finishes to all
types of mechanical systems).....$ 37.01         10.84
Fire Stop Technician
(Application of Firestopping
Materials for wall openings
and penetrations in walls,
floors, ceilings and curtain
walls).........................$ 20.76         10.23
----------------------------------------------------------------
 ASBE0005-004 08/07/2006


                        Rates          Fringes
```

```
Asbestos Removal
worker/hazardous material
handler (Includes
preparation, wetting,
stripping, removal,
scrapping, vacuuming, bagging
and disposing of all
insulation materials from
mechanical systems, whether
they contain asbestos or not)....$ 19.55          6.38
----------------------------------------------------------------
 BOIL0092-003 10/01/2007

                              Rates           Fringes

BOILERMAKER.....................$ 37.99          18.11
----------------------------------------------------------------
* BRCA0004-008 11/01/2008

                              Rates           Fringes

BRICKLAYER; MARBLE SETTER.......$ 31.00          12.20
----------------------------------------------------------------
 BRCA0018-004 06/01/2007

                              Rates           Fringes

MARBLE FINISHER.................$ 24.02          8.41
TILE FINISHER...................$ 19.82          7.51
Tile Layer......................$ 30.55          11.62
----------------------------------------------------------------
 BRCA0018-010 10/08/2007

                              Rates           Fringes

TERRAZZO FINISHER...............$ 25.54          8.62
TERRAZZO WORKER/SETTER..........$ 32.63          9.41
----------------------------------------------------------------
 CARP0409-002 07/01/2007

                              Rates           Fringes

Diver
     (1) Wet....................$ 634.24         8.20
     (2) Standby................$ 317.12         8.20
     (3) Tender.................$ 309.12         8.20
     (4) Assistant Tender.......$ 285.12         8.20

Amounts in "Rates' column are per day
----------------------------------------------------------------
 CARP0409-008 01/01/2007

                              Rates           Fringes

Modular Furniture Installer......$ 18.25         7.16
----------------------------------------------------------------
 CARP0547-001 07/01/2007

                              Rates           Fringes
```

```
CARPENTER
       (1)   Bridge.................$ 35.44          9.20
       (2)   Commercial Building....$ 30.71          9.20
       (3)   Heavy & Highway........$ 35.31          9.20
       (4)   Residential / Light
       Commercial.................$ 23.49           9.20
MILLWRIGHT.....................$ 35.81              9.20
PILEDRIVERMAN..................$ 35.44              9.20
----------------------------------------------------------------
 CARP0547-002 07/01/2007
```

|  | Rates | Fringes |
|---|---|---|

```
Drywall
       (1) Work on wood framed
       construction of single
       family residences,
       apartments or condominiums
       under four stories
       Drywall Installer/Lather...$ 21.00          7.82
       Drywall Stocker/Scrapper...$ 11.00          5.56
       (2) All other work
       Drywall Installer / Lather.$ 26.26          8.17
       Drywall Stocker/Scrapper...$ 11.00          5.56
----------------------------------------------------------------
 ELEC0569-001 12/01/2006
```

|  | Rates | Fringes |
|---|---|---|

```
Electricians (Tunnel Work)
       Cable Splicer..............$ 37.35         3%+11.08
       Electrician................$ 36.51         3%+11.08
Electricians: (All Other
Work, Including 4 Stories
Residential)
       Cable Splicer..............$ 33.20         3%+11.08
       Electrician................$ 32.45         3%+11.08
----------------------------------------------------------------
 ELEC0569-005 12/01/2007
```

|  | Rates | Fringes |
|---|---|---|

```
Sound & Communications
       Sound Technician...........$ 23.45         3%+9.68
       Soundman...................$ 16.24         3%+7.51

 SOUND TECHNICIAN: Terminating, operating and performing
 final check-out

 SOUNDMAN: Wire-pulling, splicing, assembling and  installing
 devices

 SCOPE OF WORK Assembly, installation, operation, service and
 maintenance of components or systems as used in closed
 circuit television, amplified master television
 distribution, CATV on private property, intercommunication,
 burglar alarm, fire alarm, life support and all security
 alarms, private and public telephone and related telephone
 interconnect, public address, paging, audio, language,
```

```
electronic, background music system less than line voltage
or any system acceptable for class two wiring for private,
commercial, or industrial use furnished by leased wire,
frequency modulation or other recording devices, electrical
apparatus by means of which electricity is applied to the
amplification, transmission, transference, recording or
reproduction of voice, music, sound, impulses and video.
Excluded from this Scope of Work - transmission, service
and maintenance of background music.  All of the above
shall include the installation and transmission over fiber
optics.
-----------------------------------------------------------------
 ELEC0569-006 12/01/2005

Work on street lighting; traffic signals; and underground
systems and/or established easements outside of buildings


                                  Rates          Fringes

Traffic signal, street light
and underground work
        Utility Technician #1.......$ 18.15        3%+7.17
        Utility Technician #2.......$ 16.50        3%+7.17

STREET LIGHT & TRAFFIC SIGNAL WORK:

  UTILITY TECHNICIAN #1: Installation of street lights and
  traffic signals, including electrical circuitry,
  programmable controller, pedestal-mounted electrical meter
  enclosures and laying of pre-assembled cable in ducts.  The
  layout of electrical systems and communication installation
  including proper position of trench depths, and radius at
  duct banks, location for manholes, street lights and
  traffic signals.

  UTILITY TECHNICIAN #2: Distribution of material at jobsite,
  installation of underground ducts for electrical,
  telephone, cable TV land communication systems. The
  setting, leveling, grounding and racking of precast
  manholes, handholes and transformer pads.
-----------------------------------------------------------------
 ELEC0569-008 12/01/2005

                                  Rates          Fringes

ELECTRICIAN (Residential, 1-3
Stories)........................$ 21.00           3%+2.55
-----------------------------------------------------------------
 ELEC1245-001 06/01/2008

                                  Rates          Fringes

LINE CONSTRUCTION
        (1) Lineman; Cable splicer..$ 43.07       12.57
        (2) Equipment specialist
        (operates crawler
        tractors, commercial motor
        vehicles, backhoes,
        trenchers, cranes (50 tons
```

```
              and below), overhead &
              underground distribution
              line   equipment)..........$ 34.40          11.53
              (3) Groundman...............$ 26.31          11.29
              (4) Powderman...............$ 38.46          11.69
```

```
   HOLIDAYS: New Year's Day, M.L. King Day, Memorial Day,
   Independence Day, Labor Day, Veterans Day, Thanksgiving Day
   and day after Thanksgiving, Christmas Day
----------------------------------------------------------------
   ELEV0018-001 01/01/2008
```

|  | Rates | Fringes |
|---|---|---|
| ELEVATOR MECHANIC...............$ 43.10 | | 16.285 |

```
FOOTNOTE:
   PAID VACATION:  Employer contributes 8% of regular hourly
   rate as vacation pay credit for employees with more than 5
   years of service, and 6% for 6 months to 5 years of service.
   PAID HOLIDAYS: New Years Day, Memorial Day, Independence Day,
   Labor Day, Veterans Day, Thanksgiving Day, Friday after
   Thanksgiving, and Christmas Day.
----------------------------------------------------------------
   ENGI0012-003 07/01/2008
```

|  | Rates | Fringes |
|---|---|---|
| POWER EQUIPMENT OPERATOR (All Other Work) | | |
| GROUP  1....................$ 35.28 | | 16.47 |
| GROUP  2....................$ 36.06 | | 16.47 |
| GROUP  3....................$ 36.35 | | 16.47 |
| GROUP  4....................$ 37.84 | | 16.47 |
| GROUP  5....................$ 38.94 | | 16.47 |
| GROUP  6....................$ 38.06 | | 16.47 |
| GROUP  7....................$ 39.16 | | 16.47 |
| GROUP  8....................$ 38.17 | | 16.47 |
| GROUP  9....................$ 39.27 | | 16.47 |
| GROUP 10....................$ 38.29 | | 16.47 |
| GROUP 11....................$ 39.39 | | 16.47 |
| GROUP 12....................$ 38.46 | | 16.47 |
| GROUP 13....................$ 38.56 | | 16.47 |
| GROUP 14....................$ 38.59 | | 16.47 |
| GROUP 15....................$ 38.67 | | 16.47 |
| GROUP 16....................$ 38.79 | | 16.47 |
| GROUP 17....................$ 38.96 | | 16.47 |
| GROUP 18....................$ 39.06 | | 16.47 |
| GROUP 19....................$ 39.17 | | 16.47 |
| GROUP 20....................$ 39.29 | | 16.47 |
| GROUP 21....................$ 39.46 | | 16.47 |
| GROUP 22....................$ 39.56 | | 16.47 |
| GROUP 23....................$ 39.67 | | 16.47 |
| GROUP 24....................$ 39.79 | | 16.47 |
| GROUP 25....................$ 39.96 | | 16.47 |
| POWER EQUIPMENT OPERATOR (Cranes, Piledriving & Hoisting) | | |
| GROUP  1....................$ 36.63 | | 16.47 |
| GROUP  2....................$ 37.41 | | 16.47 |

```
      GROUP   3....................$ 37.70              16.47
      GROUP   4....................$ 37.84              16.47
      GROUP   5....................$ 38.06              16.47
      GROUP   6....................$ 38.17              16.47
      GROUP   7....................$ 38.29              16.47
      GROUP   8....................$ 38.46              16.47
      GROUP   9....................$ 38.63              16.47
      GROUP  10....................$ 39.63              16.47
      GROUP  11....................$ 40.63              16.47
      GROUP  12....................$ 41.63              16.47
      GROUP  13....................$ 42.63              16.47
POWER EQUIPMENT OPERATOR
(Tunnel Work)
      GROUP   1....................$ 37.13              16.47
      GROUP   2....................$ 37.91              16.47
      GROUP   3....................$ 38.20              16.47
      GROUP   4....................$ 38.34              16.47
      GROUP   5....................$ 38.56              16.47
      GROUP   6....................$ 38.67              16.47
      GROUP   7....................$ 38.79              16.47
```

FOOTNOTES:
   PREMIUM PAY of $3.75 per hour shall be paid on all power
   equipment operator work at Camp Pendleton, Point Arguello,
   and Vandenburg AFB.
   Workers required to suit up and work in a hazardous material
   environment: $2.00 per hour additional.  Combination mixer
   and compressor operator on gunite work shall be classified
   as a concrete mobile mixer operator.

POWER EQUIPMENT OPERATORS CLASSIFICATIONS

   GROUP 1: Bargeman; Brakeman; Compressor operator; Ditch
   Witch, with seat or similar type equipment; Elevator
   operator-inside; Engineer Oiler; Forklift operator
   (includes loed, lull or similar types under 5 tons;
   Generator operator; Generator, pump or compressor plant
   operator; Pump operator; Signalman; Switchman

   GROUP 2: Asphalt-rubber plant operator (nurse tank operator);
   Concrete mixer operator-skip type; Conveyor operator;
   Fireman; Forklift operator (includes loed, lull or similar
   types over 5 tons; Hydrostatic pump operator; oiler crusher
   (asphalt or concrete plant); Petromat laydown machine; PJU
   side dum jack; Screening and conveyor machine operator (or
   similar types); Skiploader (wheel type up to 3/4 yd.
   without attachment); Tar pot fireman; Temporary heating
   plant operator; Trenching machine oiler

   GROUP 3: Asphalt-rubber blend operator; Bobcat or similar
   type (Skid steer); Equipment greaser (rack); Ford Ferguson
   (with dragtype attachments); Helicopter radioman (ground);
   Stationary pipe wrapping and cleaning machine operator

   GROUP 4: Asphalt plant fireman; Backhoe operator (mini-max or
   similar type); Boring machine operator; Boxman or mixerman
   (asphalt or concrete); Chip spreading machine operator;
   Concrete cleaning decontamination machine operator;
   Concrete Pump Operator (small portable); Drilling machine
   operator, small auger types (Texoma super economatic or

similar types – Hughes 100 or 200 or similar types –
drilling depth of 30' maximum); Equipment greaser (grease
truck); Guard rail post driver operator; Highline cableway
signalman; Horizontal Directional Drilling Machine;
Hydra-hammer-aero stomper; Micro Tunneling (above ground
tunnel); Power concrete curing machine operator; Power
concrete saw operator; Power-driven jumbo form setter
operator; Power sweeper operator; Rock Wheel Saw/Trencher;
Roller operator (compacting); Screed operator (asphalt or
concrete); Trenching machine operator (up to 6 ft.); Vacuum
or much truck

GROUP 5: Equipment Greaser (Grease Truck/Multi Shift).

GROUP 6: Articulating material hauler; Asphalt plant
engineer; Batch plant operator; Bit sharpener; Concrete
joint machine operator (canal and similar type); Concrete
planer operator; Dandy digger; Deck engine operator;
Derrickman (oilfield type); Drilling machine operator,
bucket or auger types (Calweld 100 bucket or similar types
– Watson 1000 auger or similar types – Texoma 330, 500 or
600 auger or similar types – drilling depth of 45'
maximum); Drilling machine operator; Hydrographic seeder
machine operator (straw, pulp or seed), Jackson track
maintainer, or similar type; Kalamazoo Switch tamper, or
similar type; Machine tool operator; Maginnis internal full
slab vibrator, Mechanical berm, curb or gutter(concrete or
asphalt); Mechanical finisher operator (concrete,
Clary-Johnson-Bidwell or similar); Micro tunnel system
(below ground); Pavement breaker operator (truck mounted);
Road oil mixing machine operator; Roller operator (asphalt
or finish), rubber-tired earth moving equipment (single
engine, up to and including 25 yds. struck); Self-propelled
tar pipelining machine operator; Skiploader operator
(crawler and wheel type, over 3/4 yd. and up to and
including 1-1/2 yds.); Slip form pump operator (power
driven hydraulic lifting device for concrete forms);
Tractor operator-bulldozer, tamper-scraper (single engine,
up to 100 h.p. flywheel and similar types, up to and
including D-5 and similar types); Tugger hoist operator (1
drum); Ultra high pressure waterjet cutting tool system
operator; Vacuum blasting machine operator

GROUP 7: Welder - General

GROUP 8: Asphalt or concrete spreading operator (tamping or
finishing); Asphalt paving machine operator (Barber Greene
or similar type); Asphalt-rubber distribution operator;
Backhoe operator (up to and including 3/4 yd.), small ford,
Case or similar; Cast-in-place pipe laying machine
operator; Combination mixer and compressor operator (gunite
work); Compactor operator (self-propelled); Concrete mixer
operator (paving); Crushing plant operator; Drill Doctor;
Drilling machine operator, Bucket or auger types (Calweld
150 bucket or similar types – Watson 1500, 2000 2500 auger
or similar types – Texoma 700, 800 auger or similar types –
drilling depth of 60' maximum); Elevating grader operator;
Grade checker; Gradall operator; Grouting machine operator;
Heavy-duty repairman; Heavy equipment robotics operator;
Kalamazoo ballaste regulator or similar type; Kolman belt

loader and similar type; Le Tourneau blob compactor or
similar type; Loader operator (Athey, Euclid, Sierra and
similar types); Mobark Chipper or similar; Ozzie padder or
similar types; P.C. slot saw; Pneumatic concrete placing
machine operator (Hackley-Presswell or similar type);
Pumpcrete gun operator; Rock Drill or similar types; Rotary
drill operator (excluding caisson type); Rubber-tired
earth-moving equipment operator (single engine,
caterpillar, Euclid, Athey Wagon and similar types with any
and all attachments over 25 yds. up to and including 50 cu.
yds. struck); Rubber-tired earth-moving equipment operator
(multiple engine up to and including 25 yds. struck);
Rubber-tired scraper operator (self-loading paddle wheel
type-John Deere, 1040 and similar single unit); Self-
propelled curb and gutter machine operator; Shuttle buggy;
Skiploader operator (crawler and wheel type over 1-1/2 yds.
up to and including 6-1/2 yds.); Soil remediation plant
operator; Surface heaters and planer operator; Tractor
compressor drill combination operator; Tractor operator
(any type larger than D-5 - 100 flywheel h.p. and over, or
similar-bulldozer, tamper, scraper and push tractor single
engine); Tractor operator (boom attachments), Traveling
pipe wrapping, cleaning and bendng machine operator;
Trenching machine operator (over 6 ft. depth capacity,
manufacturer's rating); trenching Machine with Road Miner
attachment (over 6 ft depth capacity): Ultra high pressure
waterjet cutting tool system mechanic; Water pull
(compaction) operator

GROUP 9: Heavy Duty Repairman

    GROUP 10: Drilling machine operator, Bucket or auger types
    (Calweld 200 B bucket or similar types-Watson 3000 or 5000
    auger or similar types-Texoma 900 auger or similar
    types-drilling depth of 105' maximum); Dual drum mixer,
    dynamic compactor LDC350 (or similar types); Monorail
    locomotive operator (diesel, gas or electric); Motor
    patrol-blade operator (single engine); Multiple engine
    tractor operator (Euclid and similar type-except Quad 9
    cat.); Rubber-tired earth-moving equipment operator (single
    engine, over 50 yds. struck); Pneumatic pipe ramming tool
    and similar types; Prestressed wrapping machine operator;
    Rubber-tired earth-moving equipment operator (single
    engine, over 50 yds. struck); Rubber tired earth moving
    equipment operator (multiple engine, Euclid, caterpillar
    and similar over 25 yds. and up to 50 yds. struck), Tower
    crane repairman; Tractor loader operator (crawler and wheel
    type over 6-1/2 yds.); Woods mixer operator (and similar
    Pugmill equipment)

    GROUP 11: Heavy Duty Repairman - Welder Combination, Welder -
    Certified.

    GROUP 12: Auto grader operator; Automatic slip form operator;
    Drilling machine operator, bucket or auger types (Calweld,
    auger 200 CA or similar types - Watson, auger 6000 or
    similar types - Hughes Super Duty, auger 200 or similar
    types - drilling depth of 175' maximum); Hoe ram or similar
    with compressor; Mass excavator operator less tha 750 cu.
    yards; Mechanical finishing machine operator; Mobile form

traveler operator; Motor patrol operator (multi-engine);
Pipe mobile machine operator; Rubber-tired earth- moving
equipment operator (multiple engine, Euclid, Caterpillar
and similar type, over 50 cu. yds. struck); Rubber-tired
self- loading scraper operator (paddle-wheel-auger type
self-loading - two (2) or more units)

GROUP 13: Rubber-tired earth-moving equipment operator
operating equipment with push-pull system (single engine,
up to and including 25 yds. struck)

GROUP 14: Canal liner operator; Canal trimmer operator;
Remote- control earth-moving equipment operator (operating
a second piece of equipment: $1.00 per hour additional);
Wheel excavator operator (over 750 cu. yds.)

GROUP 15: Rubber-tired earth-moving equipment operator,
operating equipment with push-pull system (single engine,
Caterpillar, Euclid, Athey Wagon and similar types with any
and all attachments over 25 yds. and up to and including 50
yds. struck); Rubber-tired earth-moving equipment operator,
operating equipment with push-pull system (multiple
engine-up to and including 25 yds. struck)

GROUP 16: Rubber-tired earth-moving equipment operator,
operating equipment with push-pull system (single engine,
over 50 yds. struck); Rubber-tired earth-moving equipment
operator, operating equipment with push-pull system
(multiple engine, Euclid, Caterpillar and similar, over 25
yds. and up to 50 yds. struck)

GROUP 17: Rubber-tired earth-moving equipment operator,
operating equipment with push-pull system (multiple engine,
Euclid, Caterpillar and similar, over 50 cu. yds. struck);
Tandem tractor operator (operating crawler type tractors in
tandem - Quad 9 and similar type)

GROUP 18: Rubber-tired earth-moving equipment operator,
operating in tandem (scrapers, belly dumps and similar
types in any combination, excluding compaction units -
single engine, up to and including 25 yds. struck)

GROUP 19: Rotex concrete belt operator (or similar types);
Rubber-tired earth-moving equipment operator, operating in
tandem (scrapers, belly dumps and similar types in any
combination, excluding compaction units - single engine,
Caterpillar, Euclid, Athey Wagon and similar types with any
and all attachments over 25 yds.and up to and including 50
cu. yds. struck); Rubber-tired earth-moving equipment
operator, operating in tandem (scrapers, belly dumps and
similar types in any combination, excluding compaction
units - multiple engine, up to and including 25 yds. struck)

GROUP 20: Rubber-tired earth-moving equipment operator,
operating in tandem (scrapers, belly dumps and similar
types in any combination, excluding compaction units -
single engine, over 50 yds. struck); Rubber-tired
earth-moving equipment operator, operating in tandem
(scrapers, belly dumps, and similar types in any
combination, excluding compaction units - multiple engine,

Euclid, Caterpillar and similar, over 25 yds. and up to 50
yds. struck)

GROUP 21: Rubber-tired earth-moving equipment operator,
operating in tandem (scrapers, belly dumps and similar
types in any combination, excluding compaction units -
multiple engine, Euclid, Caterpillar and similar type, over
50 cu. yds. struck)

GROUP 22: Rubber-tired earth-moving equipment operator,
operating equipment with the tandem push-pull system
(single engine, up to and including 25 yds. struck)

GROUP 23: Rubber-tired earth-moving equipment operator,
operating equipment with the tandem push-pull system
(single engine, Caterpillar, Euclid, Athey Wagon and
similar types with any and all attachments over 25 yds. and
up to and including 50 yds. struck); Rubber-tired
earth-moving equipment operator, operating with the tandem
push-pull system (multiple engine, up to and including 25
yds. struck)

GROUP 24: Rubber-tired earth-moving equipment operator,
operating equipment with the tandem push-pull system
(single engine, over 50 yds. struck); Rubber-tired
earth-moving equipment operator, operating equipment with
the tandem push-pull system (multiple engine, Euclid,
Caterpillar and similar, over 25 yds. and up to 50 yds.
struck)

GROUP 25: Concrete pump operator-truck mounted; Rubber-tired
earth-moving equipment operator, operating equipment with
the tandem push-pull system (multiple engine, Euclid,
Caterpillar and similar type, over 50 cu. yds. struck)

CRANES, PILEDRIVING AND HOISTING EQUIPMENT CLASSIFICATIONS

GROUP 1: Engineer oiler; Fork lift operator (includes loed,
lull   or similar types)

GROUP 2: Truck crane oiler

GROUP 3: A-frame or winch truck operator; Ross carrier
operator (jobsite)

GROUP 4: Bridge-type unloader and turntable operator;
Helicopter hoist operator

GROUP 5:  Hydraulic boom truck; Stinger crane (Austin-Western
or similar type); Tugger hoist operator (1 drum)

GROUP 6: Bridge crane operator; Cretor crane operator; Hoist
operator (Chicago boom and similar type); Lift mobile
operator; Lift slab machine operator (Vagtborg and similar
types); Material hoist and/or manlift operator; Polar
gantry crane operator; Self Climbing scaffold (or similar
type); Shovel, backhoe, dragline, clamshell operator (over
3/4 yd. and up to 5 cu. yds. mrc); Tugger hoist operator

GROUP 7: Pedestal crane operator; Shovel, backhoe, dragline,

clamshell operator (over 5 cu. yds. mrc); Tower crane
repair; Tugger hoist operator (3 drum)

GROUP 8: Crane operator (up to and including 25 ton
capacity); Crawler transporter operator; Derrick barge
operator (up to and including 25 ton capacity); Hoist
operator, stiff legs, Guy derrick or similar type (up to
and including 25 ton capacity); Shovel, backhoe, dragline,
clamshell operator (over 7 cu. yds., M.R.C.)

GROUP 9: Crane operator (over 25 tons and up to and including
50 tons mrc); Derrick barge operator (over 25 tons up to
and including 50 tons mrc); Highline cableway operator;
Hoist operator, stiff legs, Guy derrick or similar type
(over 25 tons up to and including 50 tons mrc); K-crane
operator; Polar crane operator; Self erecting tower crane
operator maximum lifting capacity ten tons

GROUP 10: Crane operator (over 50 tons and up to and
including 100 tons mrc); Derrick barge operator (over 50
tons up to and including 100 tons mrc); Hoist operator,
stiff legs, Guy derrick or similar type (over 50 tons up to
and including 100 tons mrc), Mobile tower crane operator
(over 50 tons, up to and including 100 tons M.R.C.); Tower
crane operator and tower gantry

GROUP 11: Crane operator (over 100 tons and up to and
including 200 tons mrc); Derrick barge operator (over 100
tons up to and including 200 tons mrc); Hoist operator,
stiff legs, Guy derrick or similar type (over 100 tons up
to and including 200 tons mrc); Mobile tower crane operator
(over 100 tons up to and including 200 tons mrc)

GROUP 12: Crane operator (over 200 tons up to and including
300 tons mrc); Derrick barge operator (over 200 tons up to
and including 300 tons mrc); Hoist operator, stiff legs,
Guy derrick or similar type (over 200 tons, up to and
including 300 tons mrc); Mobile tower crane operator (over
200 tons, up to and including 300 tons mrc)

GROUP 13: Crane operator (over 300 tons); Derrick barge
operator (over 300 tons); Helicopter pilot; Hoist operator,
stiff legs, Guy derrick or similar type (over 300 tons);
Mobile tower crane operator (over 300 tons)

TUNNEL CLASSIFICATIONS

  GROUP 1: Skiploader (wheel type up to 3/4 yd. without
  attachment)

GROUP 2: Power-driven jumbo form setter operator

  GROUP 3: Dinkey locomotive or motorperson (up to and
  including 10 tons)

  GROUP 4: Bit sharpener; Equipment greaser (grease truck);
  Slip form pump operator (power-driven hydraulic lifting
  device for concrete forms); Tugger hoist operator (1 drum);
  Tunnel locomotive operator (over 10 and up to and including
  30 tons)

```
GROUP 5: Backhoe operator (up to and including 3/4 yd.);
Small Ford, Case or similar; Drill doctor; Grouting machine
operator; Heading shield operator; Heavy-duty repairperson;
Loader operator (Athey, Euclid, Sierra and similar types);
Mucking machine operator (1/4 yd., rubber-tired, rail or
track type); Pneumatic concrete placing machine operator
(Hackley-Presswell or similar type); Pneumatic heading
shield (tunnel); Pumpcrete gun operator; Tractor compressor
drill combination operator; Tugger hoist operator (2 drum);
Tunnel locomotive operator (over 30 tons)
```

```
GROUP 6: Heavy Duty Repairman
```

```
GROUP 7:  Tunnel mole boring machine operator
```
----------------------------------------------------------------
```
 ENGI0012-004 08/01/2008
```

|                                               | Rates    | Fringes |
|-----------------------------------------------|----------|---------|
| POWER EQUIPMENT OPERATOR (DREDGING)           |          |         |
| (1) Leverman..............$ 43.28             |          | 16.47   |
| (2) Dredge dozer...........$ 38.81            |          | 16.47   |
| (3) Deckmate...............$ 38.70            |          | 16.47   |
| (4) Winch operator (stern winch on dredge)...........$ 38.15 |  | 16.47   |
| (5) Fireman-Oiler, Deckhand, Bargeman, Leveehand.................$ 37.61 |  | 16.47   |
| (6) Barge Mate.............$ 38.22            |          | 16.47   |

----------------------------------------------------------------
```
 IRON0002-004 07/01/2008
```

|                                               | Rates    | Fringes |
|-----------------------------------------------|----------|---------|
| Ironworkers:                                  |          |         |
| Fence Erector..............$ 25.96            |          | 14.08   |
| Ornamental, Reinforcing and Structural.............$ 31.83 |  | 22.17   |

```
PREMIUM PAY:
```

```
$6.00 additional per hour at the following locations:
```

```
China Lake Naval Test Station, Chocolate Mountains Naval
Reserve-Niland,
Edwards AFB, Fort Irwin Military Station, Fort Irwin Training
Center-Goldstone, San Clemente Island, San Nicholas Island,
Susanville Federal Prison, 29 Palms - Marine Corps, U.S. Marine
Base - Barstow, U.S. Naval Air Facility - Sealey, Vandenberg AFB
```

```
$4.00 additional per hour at the following locations:
```

```
Army Defense Language Institute - Monterey, Fallon Air Base,
Naval Post Graduate School - Monterey, Yermo Marine Corps
Logistics Center
```

```
$2.00 additional per hour at the following locations:
```